# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**WALTER BARRY by his next friend
ELAINE BARRY, on behalf of himself
and all others similarly situated,**

       **Plaintiff,**　　　　　　　　　**Case No.**

**v.**　　　　　　　　　　　　　　　**Hon. _____**

　　　　　　　　　　　　　　　　　**U.S. District Judge**

**MAURA CORRIGAN,
in her capacity as Director, Michigan
Department of Human Services,**

       **Defendant.**

_____/

## CLASS ACTION COMPLAINT

## PRELIMINARY STATEMENT

### Denial of Due Process Under Federal Constitution and Law – Counts I and II

1.  This action challenges the inadequate and unlawful "criminal justice disqualification" notices issued by Defendant's Michigan Department of Human Services to applicants for, or recipients of, needs-based benefits under DHS-administered public assistance programs, whose benefits have been or will be

denied, terminated, or reduced based on an alleged criminal justice disqualification.

2.   The public assistance benefits at issue are intended to prevent hunger, to ensure a minimum level of economic security for families with children, refugees and the disabled, and to support self-sufficiency and employment by providing safe childcare for low-income parents engaged in employment or education and training activities. These programs are critically important to the wellbeing of the named plaintiff, class members, and their families.

3.   Defendant's notices merely state:

"you or a member of your group is not eligible for assistance due to a criminal justice disqualification. Please contact your local law enforcement agency to resolve."

The notices thus fail to provide any specific information about the reasons for or nature of the criminal justice disqualification. Affected individuals have no way to know why their access to assistance is being denied, reduced, or terminated; for how long they are being cut off from assistance; whether they dispute any of the Defendant's factual findings that support the action; or what steps they could potentially take to have benefits reinstated.

4.  Defendant has violated Plaintiff's and proposed class members' rights to adequate notice, and a meaningful opportunity to be heard, as a matter of both

constitutional due process (Count I) and federal Supplemental Nutrition Assistance Program (SNAP) law, 7 U.S.C. 2020(e)(10) (Count II), which are enforceable under 42 U.S.C. 1983.

### Denial of Food Assistance for Which Plaintiff and Others Similarly Situated Are Eligible Under Federal Standards – Counts III and IV

5.    Plaintiff also challenges Defendant's "fugitive felon" policy and practice, and the state law on which it is based, which disqualify people from Food Assistance based on the mere existence of an outstanding felony warrant for the person's arrest, as identified through a computerized "match," without requiring Defendant to first find that the person is actively sought by law enforcement, and also is intentionally evading arrest or prosecution.

6.    Under federal law disqualifying **fleeing** felons, an individual with an outstanding felony warrant can be disqualified from Food Assistance, but only if Defendant makes a finding that law enforcement officials are actively seeking the individual, and that the individual knows his or her apprehension is sought and is intentionally fleeing from justice. 7 U.S.C. 2015(k).

7.    Defendant's **fugitive** felon policy and practice, and the state law on which it is based, M.C.L. 400.10b, impose eligibility requirements for receiving Food Assistance that are not established by federal law, and thus violate the rights of Plaintiff and proposed subclass members to receive Food Assistance when they are

eligible under federally-established standards, 7 U.S.C. 2014(a) and (b) and 2020(e)(5), which are enforceable under 42 U.S.C. 1983. (Count III.)

8.   Defendant's fugitive felon policy and practice, and the state law on which it is based, M.C.L. 400.10b, also are preempted by federal law under 7 U.S.C. 2014(b) and 2020(e)(5) (prohibiting states from imposing their own eligibility standards), 7 U.S.C. 2015(k) (establishing federal standards for fleeing felon disqualifications), and the Supremacy Clause of the United States Constitution, Article VI, Clause 2, because Congress has established comprehensive federal standards and requirements for Food Assistance eligibility (including standards related to felony warrants), and because M.C.L. 400.10b and Defendant's fugitive felon policy impose additional eligibility standards not set forth in federal law, conflict with federal law, and frustrate the achievement of Congress's full objectives. (Count IV.)

## Federal Remedies

9.   Plaintiff seeks relief for himself and on behalf of a Due Process Class (for Counts I and II) and an Automatic Food Assistance Disqualification Subclass (for Counts III and IV).

10.   Plaintiff seeks injunctive and declaratory relief to enforce the United States Constitution and federal law, and to ensure that he and others similarly situated receive due process, as well as the Food Assistance for which they are eligible,

pursuant to 42 U.S.C. 1983 or, alternatively, pursuant to the Supremacy Clause of the U.S. Constitution.

11.   Plaintiff also seeks an order requiring Defendant to issue notice relief, pursuant to Fed. R. Civ. P. 23, and to calculate and issue corrective payments of Food Assistance withheld from Plaintiff and class members in violation of federal law, pursuant to 7 U.S.C. 2020(b), 2020(e)(11), and 2023(b), and pursuant to Defendant's policy in BAM 406 of retroactively correcting under-issuances of benefits.

## JURISDICTION AND VENUE

12.   The Court has jurisdiction under 28 U.S.C. 1331 and 1343. Plaintiff is pursuing injunctive and declaratory relief to enforce federal rights under 42 U.S.C. 1983, or, in the alternative, the Supremacy Clause, and reasonable costs and attorney's fees under 42 U.S.C. 1988.

13.   This Court has jurisdiction to issue declaratory relief and injunctive relief under 28 U.S.C. 2201 and 2202.

14.   Venue is proper in the Eastern District, Southern Division pursuant to 28 U.S.C. 1391(b).

## PARTIES

### Named Plaintiff Walter Barry

15.   Walter Barry is a 42-year-old citizen of the United States and resident of

the City of Detroit, Wayne County, Michigan.

16.   Plaintiff Barry has developmental disabilities, including an intellectual disability that interferes with his ability to function independently. Because of his intellectual disability, Plaintiff Barry has the mental abilities of a young child and is unable to read or to write, except that he can print his name.

17.   Plaintiff Barry was in special education throughout his schooling. He was classified as trainably mentally impaired and received a certificate of completion from the John Lee Training Center when he was 25 years old.

18.   Plaintiff Barry tried to work through Michigan Rehabilitation Services in the 1990s, but he has never successfully held a job.

19.   Plaintiff Barry's only income is a Supplemental Security Income (SSI) disability check of $710 per month.

20.   Plaintiff Barry lives with his mother and Next Friend, Elaine Barry, who handles his affairs, and is his authorized representative with DHS and his Representative Payee for the Social Security Administration.

21.   In 2012, Plaintiff Barry received $186 per month in Food Assistance.

22.   Plaintiff Barry's Food Assistance made it possible to meet his basic nutritional needs.

### *December 2012 Criminal Justice Disqualification*

23.   In January 2013, Plaintiff Barry and his mother received a notice from the

Michigan Department of Human Services (DHS) dated December 31, 2012, which told Walter Barry he was disqualified from receiving Food Assistance Program benefits effective February 2013 because "you or a member of your group is not eligible for assistance due to a criminal justice disqualification." The notice also said "Please contact your local law enforcement to resolve."

24.    Exhibit A is an accurate copy of the Notice, dated December 31, 2012, that Defendant sent to Plaintiff Barry.

25.    When Plaintiff Barry and Elaine Barry received the notice from DHS in January 2013 that Plaintiff Barry's Food Assistance was going to be cut off because of a "criminal justice disqualification," Elaine Barry asked for a hearing to contest the decision.

26.    Ms. Barry also tried to figure out what the "criminal disqualification" was about and how to prove it did not apply to Plaintiff Barry.

27.    Elaine Barry was certain Plaintiff had never had anything to do with the criminal justice system or law enforcement, because of his disabilities and her close supervision of him.

28.    In January 2013, Elaine Barry took Plaintiff Barry to the City of Detroit Police Department – their local law enforcement agency, where she showed the police the December 31, 2012 notice and asked for police help in getting Walter Barry's criminal justice disqualification straightened out.

29.   When Plaintiff Barry and Elaine Barry went to the Detroit Police for help in resolving the criminal justice disqualification in January 2013, the police fingerprinted Plaintiff Barry.

30.   Ronaldo L. Turner, a police officer with the Detroit Police Department, submitted a letter stating that "investigation per fingerprint comparison disclosed" that Plaintiff Barry had "no criminal history with the Detroit Police Department."

31.   Exhibit B is an accurate copy of the statement from the Detroit Police.

32.   When Plaintiff Barry and Elaine Barry were at the police station in January 2013, the City of Detroit Police Department did not take any action to arrest Plaintiff Barry, or to jail him or take him to court.

33.   Since Ms. Barry was unsure how to prove that Plaintiff Barry did not have a "criminal justice disqualification," she also took Plaintiff Barry to his doctor to get a statement about his disabilities.

34.   Exhibit C is an accurate copy of the statement Elaine Barry got from Walter Barry's doctor to submit to DHS.

35.   Elaine Barry, as authorized representative for her Plaintiff son, gave the statements from Plaintiff Barry's doctor and from the Detroit Police Department to the administrative law judge at the Food Assistance hearing in January 2013.

36.   Defendant's administrative law judge, Suzanne Sonneborn, issued a decision that DHS had been wrong in deciding that Plaintiff Barry should be cut

off Food Assistance, and she ordered DHS to reinstate his Food Assistance.

37.    Exhibit D is an accurate copy of the February 1, 2013 Hearing Decision in Plaintiff Barry's case.

38.    Plaintiff Barry did not miss any months of Food Assistance following the December 31, 2013 termination notice, because the Hearing Decision was issued very quickly.

### *May and June 2013 Criminal Justice Disqualifications*

39.    After the Hearing Decision ordered DHS to reinstate Walter Barry's Food Assistance, DHS sent another notice to Plaintiff Barry saying that he was going to be cut off Food Assistance because of a criminal justice disqualification.

40.    The second DHS notice, dated May 16, 2013, said Mr. Barry was disqualified from receiving Food Assistance Program benefits effective June 1, 2013 because "you or a member of your group is not eligible for assistance due to a criminal justice disqualification." The notice again stated "Please contact your local law enforcement to resolve."

41.    The notice did not tell Plaintiff Barry what he had done to be disqualified from Food Assistance.

42.    Exhibit E is an accurate copy of the Notice, dated May 16, 2013, that Defendant sent to Plaintiff Barry.

43.    Plaintiff Barry had already contacted his local law enforcement to resolve

the criminal justice disqualification and the notice from DHS did not tell him what else he would need to do to stop DHS from repeatedly terminating his Food Assistance based on an outstanding felony warrant for the arrest of someone else who used his identity.

44.   Elaine Barry, as authorized representative for Plaintiff Barry, filed another hearing request with the Department of Human Services on May 18, 2013, appealing the decision to terminate Plaintiff Barry's Food Assistance.

45.   Plaintiff Barry has had no encounters with law enforcement since he went to the City of Detroit Police station in January 2013.

46.   In response to the Hearing Request in Plaintiff Barry's case, Defendant's employee, Rachel McMaster, the caseworker who handles Plaintiff Barry's Food Assistance case at DHS, issued a Hearing Summary that states "the worker had to follow procedure and close the case again" based on information from Defendant's Office of Inspector General (OIG) "that there was still an outstanding warrant for this client as of 5/13/13".

47.   Exhibit F is an accurate copy of the May 22, 2013 Hearing Summary in Plaintiff Barry's case.

48.   Robin Thomas, the Law Enforcement Information Network (LEIN) Terminal Agency Coordinator (TAC) for the DHS OIG issued a statement dated May 16, 2013, that said Walter Barry was "subject to an arrest under an

outstanding warrant arising from a felony charge" issued by the Detroit Police Department on September 2, 1989 (23 years ago). She stated that Walter met the "outstanding felony warrant criteria as of May 13, 2013."

49. Exhibit G in accurate copy of Ms. Thomas's May 16, 2013 statement.

50. Plaintiff Barry initially was told by DHS that his Food Assistance would continue until a hearing was held on his criminal justice disqualification.

51. In June 2013, Plaintiff Barry received a third DHS notice, dated June 14, 2013, that he was disqualified effective July 1, 2013 from receiving Food Assistance Program benefits because "you or a member of your group is not eligible for assistance due to a criminal justice disqualification." The notice again stated "Please contact your local law enforcement to resolve."

52. The notice did not tell Plaintiff Barry what he had done to be disqualified from Food Assistance.

53. Exhibit H is an accurate copy of the Notice, dated June 14, 2013, that Defendant sent to Plaintiff Barry.

54. In the 1980s Plaintiff Barry's older brother, Darryl L. Barry, got into trouble with law enforcement.

55. Darryl L. Barry used Walter Barry's identity as an alias when he was in trouble with law enforcement.

56. Elaine Barry intervened at the time to ensure that her son Darryl would go

to court under his own name, and she thought she had resolved any issues surrounding Darryl's use of Plaintiff Barry's identity during the 1980s.

57.   In January 2013, when Elaine and Walter Barry sought assistance at the City of Detroit Police station, the Detroit Police did not indicate that there was any connection between Darryl Barry's criminal problems in the 1980s and the criminal justice disqualification notice Walter Barry received from DHS.

58.   A hearing has not yet been held on Defendant's May 2013 decision to terminate Plaintiff Barry's Food Assistance based on a criminal justice disqualification.

59.   In spite of his timely hearing request, Plaintiff Barry has not received Food Assistance for July 2013.

60.   Without Food Assistance, Plaintiff Barry does not have enough money to pay for both his food and his share of household expenses.

## The Plaintiff Due Process Class

61.    Plaintiff brings this action on his own behalf and, pursuant to Fed. R. Civ. P. 23(b)(2), on behalf of all others similarly situated.

62.    Plaintiff seeks to represent a class consisting of:

    all past, present, and future applicants for, or recipients of, Michigan's

- Food Assistance Program (FAP),

- Family Independence Program (FIP),

- State Disability Assistance Program (SDA),

- Child Day Care (CDC), and

- Refugee Assistance Program (RAP),

("public assistance") programs who have or will suffer actual or threatened denial, reduction, or termination of benefits based on the Michigan Department of Human Services' (DHS') determination that the applicant or recipient, or a member of the applicant or recipient's household, is ineligible based on a criminal justice disqualification, and who do not receive a written notice, at the time of denial and at least 10 days prior to an actual or threatened reduction or termination, that details:

a) the nature and duration of the intended agency action,

b) the specific actions the individual can take to lift the disqualification and fully access benefits, and

c) the factual and legal reasons for the action including

   i) which of the five types of criminal justice disqualifications is at issue,

   ii) the name of the person whose alleged conduct has resulted in the disqualification,

   iii) the date, place and nature of the alleged crime and the resulting conviction or warrant,

   iv) the jurisdiction where the conviction occurred or the warrant was issued,

   v) the name of the specific person or entity with knowledge of the basis for the disqualification whom the individual can contact for additional

> information,
>
> vi) where applicable, the basis for concluding that the disqualified
> individual is aware that he or she is being sought by law enforcement
> and is fleeing to avoid prosecution, arrest, or confinement for a felony,
> and
>
> vii)  where applicable, the basis for concluding that law enforcement is
> actively seeking the individual.

63.   The class is so numerous that joinder of all members is impracticable. Fed.

R. Civ. P. 23(a)(1).

64.   Upon information and belief, at least hundreds and likely thousands of

people throughout the State of Michigan are members of the proposed class.

65.   The exact size of the class and the names and contact information of the

class members are in Defendant's control.

66.   The questions of law and fact at issue here – whether Defendant has

violated the U.S. Constitution, federal statutes, and the implementing federal

regulations by denying, reducing, or terminating public assistance to Plaintiff and

class members without providing written notice detailing the reasons for the denial,

reduction, or termination – are common to all class members. These common

questions of law and fact predominate over any questions affecting only individual

class members.

67.   The claims and defenses of the named Plaintiff are typical of the claims

and defenses of the class.

68.   The named Plaintiff's claims arise from Defendant's practice of issuing the same inadequate, computer-generated notices to all class members.

69.   The claims of the named Plaintiff arise from the same conduct by Defendant that has been or will be applied to all class members.

70.   The named Plaintiff will fairly and adequately represent the interests of the class.

71.   There is no foreseeable antagonism or conflict of interest within the class.

72.   The named Plaintiff's attorneys are competent and experienced in the areas of law raised in this litigation.

73.   The requested relief is appropriate for this class because Defendant has sent or will in the future send legally insufficient notices to all members of the class, thus denying them both adequate notice and a meaningful opportunity to be heard.

**The Plaintiff Automatic Food Assistance Disqualification Subclass**

74.  Plaintiff seek to represent a subclass consisting of:

all past, present, and future applicants for, or recipients of, Michigan's Food Assistance Program benefits, who have suffered or will suffer actual or threatened denial, reduction, or termination of Food Assistance Program benefits based on DHS' policy of disqualifying individuals as fugitive felons, without finding that the individual is intentionally fleeing from justice to avoid prosecution, or custody or confinement after conviction, and

without finding that the individual is actively sought by law enforcement for a crime that is a felony.

75.    The subclass is so numerous that joinder of all members is impracticable.

76.    Upon information and belief, the subclass contains at least hundreds and perhaps thousands of people throughout the State of Michigan.

77.    The exact size of the class and the names and contact information of the subclass members are in Defendant's control.

78.    The questions in this Complaint – whether Defendant's disqualification of individuals from receiving Food Assistance based on the "fugitive felon" definition in her written policy, and the state law upon which it is based, are in violation of individuals' rights under federal Supplemental Nutrition Assistance Program (SNAP) law, or are preempted by that law – are common to all subclass members.

79.    The named Plaintiff's claims arise from Defendant's practice of actual or threatened denial, termination, or reduction of Food Assistance to households that contain individuals identified by Defendant as fugitive felons.

80.    The claims and defenses of the named Plaintiff are typical of the claims and defenses of the subclass.

81.    The claims of the named Plaintiff arise from the same conduct by Defendant that has been or will be applied to all subclass members.

82.    The named Plaintiff will fairly and adequately represent the interests of the subclass.

83.    There is no foreseeable antagonism or conflict of interest within the subclass.

84.    The named Plaintiff's attorneys are competent and experienced in the areas of law raised in this litigation.

85.    The requested relief is appropriate for this subclass because Defendant has denied, reduced, or terminated Food Assistance to all members of the subclass (or will in the future), based on the challenged fugitive felon policy and practices.

## Defendant

86.    MAURA CORRIGAN is Director of the Michigan Department of Human Services (DHS).

87.    DHS is the state agency responsible for administering the Supplemental Nutritional Assistance Program (SNAP), known in Michigan as FAP (Food Assistance Program), as well as the Temporary Assistance to Needy Families (TANF) program known in Michigan as FIP (Family Independence Program), and the State Disability Assistance (SDA), Child Development and Care (CDC) and Refugee Assistance (RAP) programs.

88.    As Director of DHS, Defendant is responsible for administering all of the DHS-administered public assistance programs in compliance with the Due Process

Clause of the Fourteenth Amendment to the U.S. Constitution.

89.    As Director of DHS, Defendant is responsible for administering the Food Assistance Program in compliance with the U.S. Constitution and federal SNAP law.

90.    Defendant is sued in her official capacity.

## FACTS

### Relevant Public Assistance Programs

#### *The Food Assistance Program: SNAP and FAP*

91.    The United States Congress created the Supplemental Nutrition Assistance Program (SNAP) (formerly known as the "Food Stamp Program") as a means to alleviate hunger and malnutrition in low-income households.

92.    Under SNAP, eligible households receive Food Assistance benefits deposited on an electronic card account, which can only be used to buy food, or plants or seeds to grow food, at participating stores or markets. 7 U.S.C. 2012(k)(2), 2016(b), 2026(j)(3)(B).

93.    Federal law defines and determines both eligibility for and the amount of SNAP benefits, based on household size, income, certain expenses, and resources or assets, as well as nonfinancial factors such as employment status, age or disability, citizenship or immigration status, etc..

94.    State agencies, including DHS in Michigan, administer SNAP by

processing applications, certifying eligible households, and issuing approved Food Assistance benefits.

95.   The federal government pays for all SNAP Food Assistance benefits and shares the administrative expenses of operating SNAP with the states. 7 U.S.C. 2020(a), (d), (e).

96.   Michigan calls its SNAP program the Food Assistance Program (FAP), a needs-based, state-administered government assistance program that provides Food Assistance benefits to all individuals who meet published eligibility criteria and requirements for the program.

### The Cash Assistance Programs: FIP, SDA and RAP

97.   The Family Independence Program (FIP) is Michigan's needs-based cash assistance program for low-income families with minor children. M.C.L. 400.57 *et seq*.

98.   The family cash assistance program is paid for and administered using both federal Temporary Assistance for Needy Families (TANF) block grant funding and state funds.

99.   Under federal TANF law, Defendant must have objective criteria for determining FIP eligibility and delivering FIP benefits, as well as for the equitable treatment of FIP applicants and recipients. 42 USC 602(a)(1)(B)(iii).

100. The Michigan Social Welfare Act, M.C.L. 400.57 *et seq.,* Michigan

Administrative Code, Mich. Admin. Code R. 400.3101 *et seq.,* and implementing

DHS policies set forth the eligibility criteria and requirements for FIP benefits.

101. Individuals are eligible to receive FIP in Michigan if they meet the FIP

eligibility standards and requirements – including work requirements, M.C.L.

400.57d - 400.57g, and time limits, *id.* at 400.57a(4) and 400.57r – set forth in the

Michigan Social Welfare Act, Michigan Administrative Code, and implementing

policies. M.C.L. 400.57d(4); BEM 209 p. 1, available online at

www.mfia.state.mi.us/olmweb/ex/bem/209.pdf.

102. DHS provides small monthly cash assistance payments to very low-income

individuals with disabilities under the State Disability Assistance (SDA) program,

which is a need-based governmental assistance program funded with state general

fund dollars.

103. SDA provides benefits to all individuals who meet the eligibility standards

and requirements set forth in the annual Appropriations Act for DHS (currently

2012 P.A. 200 sec. 604), state administrative rules (Mich. Admin. Code. R.

400.3151 *et seq.*), and implementing policies.

104. The Refugee Assistance Program (RAP) is a needs-based, federally-funded

program providing both cash and medical assistance, which is designed to help

refugees become self-sufficient after their arrival in the United States.  8 U.S.C.

1522(e)

105. Refugees who meet eligibility requirements can receive cash or medical assistance for a temporary period of time after their entry to the United States. *See* 45 C.F.R. 400.40 *et seq.* and BEM 630.

### *Child Care Benefits*

106. Michigan's Child Development and Care (CDC) program is a needs-based public assistance program that pays subsidies to help low-income families pay for child care provided by enrolled or licensed providers, in order for children to have care and supervision while their parents attend work; high school or other approved education/training; or employment-related activities required as a condition of eligibility for FIP or FAP.

107. Childcare benefits support the efforts of low-income parents – including those trying to transition from welfare to work – to qualify for, find, and keep employment.

108. Childcare benefits are paid for by a mixture of state and federal funds, which varies from year to year.

109. Federal funds for childcare benefits include the TANF block grant discussed above and the Child Care and Development Fund block grant.

110. Defendant determines the family's eligibility for childcare benefits and sets upper income limits, the hourly rates payable to the providers (based on family

income, provider type and credentials, and number of children), and the number of hours for which care will be subsidized.

111. Defendant is authorized to adjust the income limit for childcare assistance eligibility and the number of hours for which care will be paid in order to prevent waiting lists in the childcare assistance program when appropriations would not otherwise be sufficient to provide childcare assistance to all eligible families. Mich. Admin. Code R. 400.5002, 400.5009, 400.5013.

112. Michigan provides childcare assistance to all families who – together with their child care providers – meet the eligibility criteria and requirements set forth in federal and state law, including Mich. Admin. Code R. 400.5001 *et seq.,* and implementing policies, without any waiting list for the program. *Child Care and Development Fund (CCDF) Plan for Michigan FFY 0212-2013*, section 2.3.7 (page 50 of pdf file), available online at http://www.michigan.gov/documents/dhs/2012-2013_State_Plan-_Final_365274_7.pdf.

## Notice and Hearing Requirements

### *Constitutional Due Process Requirements*

113. Under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, individuals have the right to meaningful notice and an opportunity to be heard when the state denies, reduces, or terminates public assistance that is

available to all eligible individuals who meet criteria set forth in federal or state statutes, rules, or policies.

114. When needs-based public assistance is reduced or terminated, the right to due process includes the right to timely notice, and a meaningful opportunity for a pre-reduction or pre-termination hearing, because of the extreme harm that may befall those who depend on needs-based assistance programs to meet their basic needs if the assistance for which they are, in fact, eligible is erroneously reduced or terminated.

115. The right to due process under the Fourteenth Amendment includes the right to notice detailing the specific, individualized reasons for the adverse action when the state denies, reduces, or terminates needs-based public assistance.

116. The right to due process under the Fourteenth Amendment includes the right to a meaningful opportunity to be heard regarding whether the state properly denied, reduced, or terminated needs-based public assistance.

117. In order for the notice and opportunity to be heard to be meaningful, the notice must provide information that is specific, detailed, and individualized enough for the individual to be able to determine both the basis for the state's action and whether, or how, to contest it.

118. In order for the notice and opportunity to be heard to be meaningful, the notice must inform individuals about what they must do to fully receive the

benefits to which they are entitled.

119. Named Plaintiff and members of the Due Process Class are entitled to all of the protections of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution when Defendant denies, reduces, or terminates their eligibility or benefits under the Food Assistance Program, Family Independence Program, State Disability Assistance Program, Child Development and Care Program, and/or Refugee Assistance Program.

### *Federal Food Assistance Notice and Hearing Requirements*

120. As the state agency responsible for administering SNAP, DHS must provide an opportunity for a "fair hearing and a prompt determination thereafter" for any person aggrieved by action taken by DHS in administering FAP, including the denial, reduction, or termination of Food Assistance. 7 U.S.C. 2020(e)(10).

121. The Food and Nutrition Service of the United States Department of Agriculture has issued regulations to implement the statutory fair hearing requirement of 7 U.S.C. 2020(e)(10), including 7 C.F.R. 273.10(g)(ii) and 273.13(a).

122. When Food Assistance is denied, DHS must "provide the household with written notice explaining the basis for the denial, the household's right to request a fair hearing, the telephone number of the food stamp office… and, if possible, the name of the person to contact for additional information." 7 C.F.R. 273.10(g)(ii).

123. When FAP benefits are reduced or terminated, DHS must "provide the household timely and adequate advance notice before the adverse action is taken." 7 C.F.R. 273.13(a). The notice must "explain[ ] in easily understandable language: The proposed action; the reason for the proposed action; the household's right to request a fair hearing; the telephone number of the food stamp office… and, if possible, the name of the person to contact for additional information…." 7 C.F.R. 273.13(a)(2).

124. 7 U.S.C. 2020(e)(10), as implemented by 7 C.F.R. 273.10(g) and 273.13(a), not only serves to implement the Due Process Clause of the Fourteenth Amendment, but also provides an independent federal law requirement for adequate due process when Food Assistance is denied, reduced, or terminated.

### Defendant's Notice and Hearing Practices When Denying, Reducing, or Terminating Public Assistance Benefits Based on Criminal Justice Disqualifications

125. The notices from Defendant to Plaintiff and members of the Due Process Class, denying, reducing, or terminating their public assistance benefits based on a criminal justice disqualification ("criminal justice disqualification notices") give as the sole "reason for intended action" the boilerplate statement that "[y]ou or a member of your group is not eligible for assistance due to a criminal justice disqualification. Please contact your local law enforcement agency to resolve.

Manual Item(s): BEM 203, ERM 202."

126. Prior to January or February 2013, when Defendant imposed a disqualification based on alleged fugitive felon status, she sent notices that gave as the reason for the disqualification, "You or a member of your group have been identified as a fugitive felon. Fugitive felons are not eligible for assistance."

127. In or around January or February 2013, Defendant changed the content of the notice sent to individuals who were being disqualified based on alleged fugitive felon status, so that the individuals received the "criminal justice disqualification" message contained in the notices to Plaintiff, instead of the "fugitive felon" message set forth in the paragraph 125 above.

128. Exhibit I is an accurate copy of minutes from a July 6, 2011 meeting attended by DHS representatives, released under the Michigan Freedom of Information Act, which included discussion of the decision to create notices that would no longer tell alleged fugitive felons that they were being disqualified because of alleged fugitive felon status.

129. Exhibit J is an accurate copy of specifications approved by DHS and issued in or around July 2010 for information technology changes to replace notices that referred to fugitive felon status with notices that referred to criminal justice disqualifications. Exhibit J was released by Defendant under the Michigan Freedom of Information Act.

130. From at least October 1, 2012 through May 31, 2013, Defendant's policy of disqualifying "fugitive felons" based on computer "matches" was contained in Bridges Eligibility Manual (BEM) 203, which has the title "Criminal Justice Disqualifications".

131. Exhibit K is an accurate copy of BEM 203 in effect from October 1, 2012 – May 31, 2013.

132. Exhibit L is an accurate copy of BEM 203 in effect from May 1– May 31, 2013.

133. Effective June 1, 2013, Defendant's policy regarding disqualification of "fugitive felons" was moved from BEM 203 (Criminal Justice Disqualifications) to a new policy item designated as BEM 204, with the title "Fugitive Felons".

134. Exhibit M is an accurate copy of BEM 203 in effect June 1, 2013.

135. Exhibit N is an accurate copy of BEM 204 in effect June 1, 2013.

136. In February 1, 2013, Defendant published policies describing the DHS/the Michigan State Police data match and the automatic disqualification of "fugitive felons", in BAM 800 and 811.

137. Exhibit O is an accurate copy of the portion of Defendant's Bridges Policy Bulletin 2013-003 announcing the "new automated match with the Michigan State Police" and the changes in BAM.

138. Exhibit P is an accurate copy of BAM 811 issued effective February 1,

2013 – April 30, 2013.

139.  Exhibit Q is an accurate copy of BAM 811 effective May 1, 2013.

140. Exhibit R is an accurate copy of BAM 800 effective February 1, 2013-May 31, 2013.

141. Exhibit S is an accurate copy of BAM 800 effective June 1, 2013.

### *The Five Types of Criminal Justice Disqualifications*

142. Under Defendant's Criminal Justice Disqualification policy in BEM 203 in effect from February 1 – May 31, 2013, there were five separate and distinct reasons for criminal justice disqualifications: (1) duplicate receipt of assistance, (2) probation or parole violation, (3) drug-related felonies, (4) Food Assistance trafficking and (5) fugitive felons.

143. The five categories of criminal justice disqualifications derive from different legal sources, including several different federal and state laws and regulations.

144. The type of benefits to which the disqualification applies, the criteria for disqualification, the duration of disqualification, and the possibility of reinstatement of benefits vary between the five categories of criminal justice disqualifications.

145. The criminal justice disqualification for "duplicate receipt of assistance" creates a 10-year bar on receipt of Food Assistance and the receipt of family cash

29

assistance, which runs from the date of the adjudication or acknowledgement of guilt.

146. The criminal justice disqualification of "probation and parole violators" creates a temporary bar on receipt of Food Assistance and the receipt of family cash assistance until the individual establishes his or her compliance with conditions of probation or parole.

147. The criminal justice disqualification for "drug-related felonies" is a lifetime bar on the receipt of Food Assistance and the receipt of family cash assistance for individuals who have been convicted in two or more cases after August 22, 1996, of felonies for the use, possession, or distribution of a controlled substance.  An individual with one drug-related felony conviction is eligible for Food Assistance (provided that he or she is not violating probation or parole), but the individual's Food Assistance benefits must be issued to an authorized representative. An individual with one drug-related felony conviction is also eligible for family cash assistance (provided that he or she is not violating probation or parole), but the individual's family cash assistance benefits must be issued in restricted form.

148. The criminal justice disqualification for "FAP trafficking" disqualifies a person from receiving Food Assistance if he or she is found guilty in court, through administrative hearing, or by signing a repayment and disqualification agreement,

of trafficking in Food Assistance benefits. The length of disqualification from Food Assistance for trafficking varies depending on the nature of the trafficking offense and, for some types of trafficking offenses, the number of times the person has been found guilty.

149. The criminal justice disqualification of "fugitive felons" creates a temporary bar on receipt of Food Assistance, child care benefits, and cash assistance for families, people with disabilities, and refugees based on the existence of an outstanding felony warrant, the existence of an outstanding extradition warrant, or the individual's admission to being a fugitive felon.

150. When a fugitive felon disqualification has been imposed, an individual is no longer disqualified from assistance as soon as the individual has addressed the issues related to the outstanding warrant.

### Defendant's Failure to Provide Adequate Notice and Meaningful Opportunity for a Fair Hearing

151. Defendant's criminal justice disqualification notices fail to detail the alleged underlying circumstances or action that gave rise to the unspecified type of criminal justice disqualification.

152. Information that is missing from Defendant's criminal justice disqualification notices includes: what allegedly occurred, where it occurred, when it occurred, which member of the "group" was involved in the occurrence, the

length of the disqualification being imposed, and/or how it can be lifted.

153. Disqualified recipients cannot determine whether they were improperly disqualified from benefits, or contest an improper disqualification, without knowing what underlying facts are alleged.

154. Defendant's criminal justice disqualification notices do not even tell Plaintiff and Due Process Class members which of the five categories of "criminal justice disqualifications" listed in BEM 203 allegedly applies to the individual being disqualified.

155. Because the different types of disqualifications listed in BEM 203 are based on different criteria, apply to different benefit programs, are of varying duration, and have different options for reinstatement, disqualified recipients cannot determine whether they were improperly disqualified from benefits, or effectively contest an improper disqualification, without knowing which type of criminal justice disqualification is at issue in their case.

156. Defendant's notices to individuals being disqualified as fugitive felons do not state what basis the Defendant has to believe that the individual is aware that he or she is being sought by law enforcement, and is fleeing to avoid prosecution, arrest, or confinement in connection with a crime that is a felony.

157. Defendant's criminal justice disqualification notices do not explain what "Manual Reference(s): BEM 203, ERM 202" refers to or where the manuals can be

accessed.

158. For "fugitive felon" disqualifications occurring on or after June 1, 2013, Defendant's notices fail to specify the Bridges Eligibility Manual (BEM) item that is the legal basis for Defendant's actions, instead citing BEM 203, which, effective June 1, 2013, no longer contains the fugitive felon disqualification policy.

159. Defendant's criminal justice disqualification notices do not specify which page(s) of the cited manual items apply to the individual's disqualification.

160. DHS has or could obtain access to information regarding the type of criminal justice disqualification and underlying basis for the disqualification that is not included in the notice of denial, reduction, or termination of public assistance benefits.

161. The DHS computer eligibility system (known as "Bridges") is programmed to show which of the five criminal justice disqualifications are applicable to an individual whose benefits have been denied, reduced, or terminated. However, that information is not included in the criminal justice disqualification notice.

162. Exhibit T is an accurate copy of some of the information available to DHS caseworkers on Bridges regarding the basis for an individual's criminal justice disqualification.

163. DHS, through its computer interface with the Law Enforcement

Information Network or other criminal justice databases, has information on the underlying basis for the disqualification, but does not provide that information in its notices. See Exhibit J, p. 12-13.

164.  For disqualifications based on a felony warrant for the person's arrest, DHS does not disclose information that is available to DHS about the felony warrant when issuing the notice of denial, reduction, or termination of public assistance.

165. In cases involving fugitive felons, DHS has instructed its employees not to provide information about the basis for the disqualification, other than the information that appears in the notice sent to the household.

166. In December 2012, Defendant's Field Operations Administration issued a Memorandum instructing local DHS offices **not** to disclose "'fugitive felon' status information" to individuals who are disqualified from receiving public assistance based on DHS' decision that the individual is a fugitive felon.

167. Exhibit U is an accurate copy of the December 2012 DHS Field Operations Administration Memorandum, FOA-2012-50, regarding the Fugitive Felon Match, released under the Michigan Freedom of Information Act.

168. DHS has provided DHS staff with training and a Job Aid that specifically directs DHS specialists (caseworkers) "NOT to inform a client of their fugitive felon status." (Emphasis in original.)

169. Exhibit V is an accurate copy of the Job Aid/training material provided to DHS staff regarding implementation of the fugitive felon computer match between DHS and Michigan State Police, released under the Michigan Freedom of Information Act.

170. When Plaintiff and members of the Due Process Class contact their caseworkers for further information, DHS caseworkers are prohibited from providing information that would enable individuals to determine why their public assistance benefits have been denied, reduced, or terminated.

171. DHS's prohibition against disclosure of basic information about the underlying bases for criminal justice disqualifications makes it more difficult – if not impossible – for individuals to address and resolve any underlying problems or to follow up to determine whether the information is accurate or not.

172. Defendant's criminal justice disqualification notices refer individuals to local law enforcement to resolve their criminal justice disqualification, but do not explain what the individual should ask law enforcement to do.

173. Defendant's criminal justice disqualifications do not explain whether or how any action by local law enforcement will "resolve" the person's eligibility for public assistance.

174. Some types of criminal justice disqualifications – such as those for drug-related felonies – cannot be "resolved" by law enforcement, as there is no action

that law enforcement can take that would affect the disqualification. In other cases, criminal justice agencies may be able to address an underlying criminal justice issue, but the appropriate agency to contact is not local police, but rather probation or parole, police in another jurisdiction, or the Michigan State Police (whose involvement may, for example, be required to correct erroneous entries in LEIN).

175. Law enforcement officials cannot reverse DHS disqualifications or reinstate benefits to disqualified individuals.

176. Defendant's computer interface is updated on a daily basis to identify individuals who no longer are identified by the Michigan State Police as meeting Defendant's definition of a "fugitive felon."

177. When a person who has been disqualified from receiving assistance as part of a household that is still receiving (reduced) assistance under the specific program from which the individual was disqualified, and when that person again becomes eligible, Defendant's Bridges eligibility system is programmed to send a "task and reminder" communication to the DHS caseworker, telling the caseworker about the person's updated status and instructing the caseworker to re-determine eligibility and benefits for the household. See Ex. U, p. 1.

178. Defendant's Job Aid/training materials instruct caseworkers to update eligibility and reinstate benefits for a person automatically disqualified from assistance as a fugitive felon once that person no longer has an outstanding warrant

for his or her arrest (by running an Eligibility Determination and Benefits Calculation through Bridges and certifying or approving the results), but only if the disqualified person is living in a household that still receives assistance under the specific program(s) from which the individual was disqualified. See Ex. V.

179. If the disqualified individual is not part of a household still receiving assistance, Defendant's Bridges eligibility system, training materials, and policy do not instruct DHS employees to take any action once an individual who was disqualified no longer has an outstanding warrant.

180. Defendant's criminal justice disqualification notices fail to inform individuals that resolving any outstanding warrants with law enforcement will <u>not</u> result in automatic reinstatement of public assistance if the individual does <u>not</u> live in a household that continues receiving public assistance for other household members during the time that the individual was disqualified from that assistance. The notices do not tell individuals what they must do to regain public assistance in that situation.

### Defendant's Denial of Food Assistance to Individuals Who Are Eligible for Food Assistance Under Federal Law

#### *Federal Mandate to Provide Food Assistance to All Eligible Households and to Use National Standards for Food Assistance Eligibility*

181. DHS must provide Food Assistance to individuals and households in

Michigan that apply for Food Assistance and meet the eligibility criteria and requirements set forth in federal SNAP law. 7 U.S.C. 2014(a).

182. Congress has mandated uniform national standards of eligibility for participation in SNAP. 7 U.S.C. 2014(b).

183. As a condition for participating in SNAP, state agencies responsible for implementing SNAP, including DHS, are prohibited from imposing any standards of eligibility other than those set by the federal government. 7 U.S.C. 2014(b) and 2020(e)(5).

184. DHS must determine eligibility for FAP, which uses federal SNAP funding, in accordance with eligibility standards and requirements set forth in the federal SNAP statute and its implementing regulations.

### Federal Eligibility Standards Related to Disqualification of Fleeing Felons

185. Under federal SNAP law, individuals are ineligible to receive Food Assistance for any period in which they are "fleeing to avoid prosecution, or custody or confinement after conviction, under the law of the place from which they are fleeing, for a crime, or attempt to commit a crime, that is a felony..." 7 U.S.C. 2015(k).

186. Federal courts consistently have held that the mere existence of an outstanding warrant is insufficient to establish that an individual is fleeing to avoid prosecution, or custody or confinement after conviction, since the term "fleeing" is

understood to mean the intentional evasion of arrest or prosecution, custody, or confinement.

187. Under federal SNAP law, the Secretary of Agriculture is required to define the terms "fleeing" and "actively seeking" for purposes of 7 U.S.C. 2015(k) to ensure that consistent procedures are used by state agencies throughout the United States, and to ensure that state agencies only disqualify "individuals whom law enforcement authorities are actively seeking for the purpose of holding criminal proceedings against the individual."

188. While the United States Department of Agriculture has yet to issue final regulations on this issue, there are proposed regulations that are consistent with the judicial interpretation of the term "fleeing."

189. The proposed federal regulations authorize the state agency, here DHS, to disqualify an individual from Food Assistance as a fleeing felon only if either:

a) the state agency verifies that an outstanding felony warrant has been issued for one of three specified escape- or flight-related felonies (escape, flight to avoid prosecution or confinement, or flight-escape, as identified by the Uniform Offense Classification Codes 4901, 4902, and 4999, respectively), and a law enforcement officer has presented the outstanding warrant to the state agency; or

b) the state agency, in the absence of an outstanding felony warrant for escape

or flight, verifies and has documented evidence that four other specific factors

exist: (i) the existence of an outstanding felony warrant for the individual; (ii)

the person is aware of, or should reasonably have been able to expect that, a

warrant has or would have been issued; (iii) the individual has taken some

action to avoid being arrested or jailed; and (iv) a law enforcement agency is

actively seeking the person. 76 Fed. Reg. 51913 (proposed 7 C.F.R. 273.11(n)).

190. Under the proposed regulations, the state agency may verify that law

enforcement is actively seeking the person by means of either:

a) a law enforcement agency statement that it intends to enforce an outstanding

felony warrant against the person within 20 days of submitting a request for

location or other information about the specific person; or

b) a law enforcement agency statement that it intends to enforce an outstanding

felony warrant against the individual within 30 days of a request for

information about the warrant from the state agency, together with confirmation

by the law enforcement agency that it has taken action to execute, or attempt to

execute, the warrant within that 30 day period.

191. Under the proposed regulations, when a felony warrant for escape or flight

is presented to the state agency for purposes of locating the person, no further

evidence that law enforcement is actively seeking the person is required.

192. Under the proposed regulations, unless there is a felony warrant for escape or flight, "the mere existence of a warrant naming an individual who is a SNAP recipient or applicant does not provide sufficient information to determine that the individual is actually a fleeing felon who is being actively sought by a law enforcement agency." 76 Fed. Reg. 51913 at *6. Before denying, reducing, or terminating Food Assistance, the state agency must verify that the four other factors exist.

### State Law Automatic Disqualification of Alleged Fugitive Felons

193. Michigan passed legislation, effective October 18, 2011, providing that DHS shall not grant public assistance to any individual who is subject to arrest under an outstanding arrest warrant arising from a felony charge against that individual in any jurisdiction. 2011 P.A. 198, codified as M.C.L. 400.10b.

194. Under state law, DHS and the Michigan State Police (MSP) are required to develop an automated program to compare data and identify public assistance recipients who have an outstanding warrant arising from a crime designated as a felony or punishable by imprisonment for more than one year, or an extradition warrant arising from a criminal charge against the individual in another jurisdiction. M.C.L. 400.10c, as amended by 2011 P.A. 198.

195. The automated computer program ("fugitive felon interface") to disqualify public assistance applicants and recipients based on the existence of outstanding

warrants became operational in January 2013.

196. Pursuant to federal law, the fugitive felon interface also automatically provides current address information for recipients of DHS-administered programs, including Food Assistance, to be released to the MSP, for purposes of assisting law enforcement officials in locating and arresting individuals with outstanding felony warrants, or probation or parole violations. DHS information on applicants not currently receiving assistance is <u>not</u> released to law enforcement through the interface.

### *Defendant's Denial of Food Assistance to Individuals Entitled to Food Assistance Under Federal Eligibility Standards, Who Are Not Fleeing from Justice and Are Not Actively Being Sought by Law Enforcement*

197. Michigan has failed to follow federal law that specifies which individuals may be disqualified as "fleeing felons," 7 U.S.C. 2015(k), instead setting its own standards for identifying a "fugitive felon."

198. Defendant's standards for identifying fugitive felons disqualify individuals from receiving FAP benefits even when they qualify for Food Assistance under all federal standards and requirements.

199. Defendant, in violation of 7 U.S.C. 2014(a) and (b) and 2020(e)(5), has imposed additional eligibility requirements for Food Assistance beyond those established under federal law, thereby denying Food Assistance to individuals who

legally are eligible to receive it.

200. Defendant's policy on disqualification of alleged felons, operationalized through the fugitive felon interface and Bridges eligibility system, provides for disqualification from Food Assistance if the individual: (1) is subject to arrest under an outstanding warrant arising from a felony charge against the individual, (2) is subject to arrest under an outstanding warrant for extradition arising from a criminal charge in the jurisdiction that issued the warrant, or (3) admits to being a fugitive felon. BEM 203, p. 1-2.

201. Under state law and Defendant's policy, individuals will be disqualified from receiving FAP and other benefits as fugitive felons without any finding that they are actively being sought by law enforcement and that they are actually fleeing.

202. Defendant's computer matches with the MSP automatically result in Defendant's Bridges eligibility system printing and mailing computer-generated criminal justice disqualification notices to individuals who are identified as being subject to arrest on a felony warrant, without any effort to determine:

   a) whether the individual has received notice or is aware that a warrant has been issued;

   b) whether the individual is intentionally seeking to evade prosecution, arrest, or confinement in connection with a felony; or

    c)  whether the jurisdiction in which the warrant allegedly was issued is actively seeking the individual for the purpose of holding criminal proceedings against the individual, or for the purpose of jailing or imprisoning the individual, for a felony.

203. When Defendant's Bridges computer system generates and mails a criminal justice disqualification notice, it also automatically schedules the reduction or termination of Food Assistance benefits that Defendant has been providing to the disqualified individual and other members (if any) of the disqualified individual's household.

204. As a result of Defendant's criminal justice disqualification policy and practices, Defendant is disqualifying individuals from Food Assistance and denying or terminating Food Assistance to those individuals in situations in which:

    a)  the warrant has been issued in the individual's name, but does not actually apply to the individual;

    b)  the individual has not been notified about the existence of the warrant or charges from which the individual allegedly is fleeing;

    c)  there has been no finding that the individual has taken flight for purposes of intentionally evading prosecution, arrest, or confinement in connection with a felony crime; and

    d)  law enforcement officials are not actively seeking the person for arrest,

prosecution, or incarceration in connection with a felony, or for extradition.

205. Under written instructions issued by Defendant's Field Operations Administration, DHS local offices are required to contact the DHS Office of Inspector General (OIG) if an individual who has been disqualified as a fugitive felon comes to the DHS office. See Ex. U.

206. Under written instructions issued by Defendant's OIG, when OIG agents are contacted by local offices because a fugitive felon is at the local DHS office, the OIG agents will contact law enforcement to determine whether the fugitive felon will be arrested.

207. Under written instructions issued by Defendant's OIG, when OIG agents are informed by law enforcement that a "fugitive felon" who has appeared at the DHS office will not be arrested, the individuals nevertheless remain disqualified from receiving assistance and the OIG agents must tell the disqualified fugitive felon to surrender to local law enforcement.

208. Exhibit W is an accurate copy of the written instructions issued by Defendant's OIG, released under the Michigan Freedom of Information Act.

209. Under Defendant's policies, DHS will not contact law enforcement officials in an effort to verify the individual's fugitive felon status unless and until the individual requests a hearing, at which time only the existence of an

outstanding warrant is verified.

210. Exhibit X is an accurate copy of emails, released under the Michigan Freedom of Information Act, regarding the verification of information at the time an individual requests a hearing regarding a criminal justice disqualification.

211. Defendant's criminal justice disqualification practices are not authorized by 7 U.S.C. 2015(k) or proposed regulations, and therefore constitute the imposition of an additional eligibility requirement for the receipt of Food Assistance in violation of 7 U.S.C. 2014(b) and 2020(e)(5).

212. Denying, reducing or terminating Food Assistance based on the mere existence of a warrant, without a determination that the recipient is fleeing from justice, results in disqualification of individuals who are eligible for Food Assistance under federal SNAP law and thus violate the rights under 7 U.S.C. 2014(a) of Plaintiff and members of the Automatic FAP Disqualification Subclass.

213. The SNAP law provisions that prohibit state agencies from imposing any standards of eligibility other than those set by the federal government – 7 U.S.C. 2014(b) and 2020(e)(5) – are preemption provisions pursuant to the Supremacy Clause.

214. When state laws or policies regarding FAP conflict with federal laws governing SNAP, the federal laws take precedence over the state laws or policies, pursuant to the Supremacy Clause.

215. When state laws or policies regarding FAP pose an obstacle to the execution of the full purposes and objectives of Congress in enacting legislation, the federal laws take precedence over the state laws or policies, pursuant to the Supremacy Clause.

216. Because federal SNAP law preempts M.C.L. 400.10b and Defendant's fugitive felon policy, Defendant may not deny, reduce or terminate Food Assistance to Plaintiff or member of the Automatic FAP Disqualification Subclass based on the mere existence of a warrant, without a determination that the recipient is "fleeing" from justice as that term is defined under federal law.

**Irreparable Harm**

217. Plaintiff and members of the Due Process Class and Automatic FAP Disqualification Subclass are, by definition, indigent individuals who, due to unemployment, disability, family circumstances, or other factors, depend on public assistance, including Food Assistance, to meet their subsistence needs, and to avoid hunger and obtain basic nutrition.

218. Plaintiff and members of the Due Process Class and Automatic FAP Disqualification Subclass have suffered or are at imminent risk of suffering the loss of benefits under needs-based public assistance programs, including Food Assistance, that they require to meet their subsistence needs, and to avoid hunger and obtain basic nutrition.

219. The denial of due process in this case is irreparable harm per se.

## CAUSES OF ACTION

### Count I – Violation of the Due Process Clause of the United States Constitution

### (Plaintiff Barry and Due Process Class)

220. Defendant is violating Plaintiff's and Due Process Class members' rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution by denying, reducing, or terminating needs-based public assistance benefits using criminal justice disqualification notices that fail to detail (a) the nature and duration of the intended action; (b) the factual and legal bases for the denial, reduction, or termination; and (c) exactly what individuals must do to lift the disqualification, to restore public assistance eligibility and to have benefits reinstated.

221. Plaintiff's and class members' rights to due process under the Fourteenth Amendment to the U.S. Constitution are enforceable under 42 U.S.C. 1983.

### Count II – Violation of Federal SNAP Law Requiring Due Process in Notice and Hearing Procedures Before Denying, Reducing, or Terminating Food Assistance

### (Plaintiff Barry and Due Process Class)

222.   Defendant is violating the named Plaintiff's and Due Process Class members' rights under federal SNAP law, including 7 U.S.C. 2020(e)(10), as

implemented by 7 C.F.R. 273.10(g) and 273.13(a), by denying, reducing, or terminating Food Assistance benefits, using criminal justice disqualification notices that fail to detail (a) the nature and duration of the intended action; (b) the factual and legal bases for the denial, reduction, or termination; and (c) exactly what individuals must do to lift the disqualification, to restore public assistance eligibility and to have benefits reinstated.

223.   Plaintiff's and class members' rights to meaningful due process as required by federal SNAP law, including 7 U.S.C. 2020(e)(10), as implemented by 7 C.F.R. 273.10(g) and 273.13(a), are enforceable under 42 U.S.C. 1983.

### Count III – Michigan State Law and Defendant's Policy of Automatically Disqualifying People Who Have Outstanding Felony Warrants Violates Federal SNAP Law

### (Plaintiff Barry and Automatic FAP Disqualification Subclass)

224.   M.C.L. 400.10b and Defendant's implementing fugitive felon policy (previously found in BEM 203 and now published in BEM 204) disqualify people from Food Assistance based on the mere existence of an outstanding felony warrant for the person's arrest, as identified through a computerized "match," without any finding that the person is actively sought by law enforcement or is consciously evading arrest or prosecution, and therefore impose requirements for Food Assistance eligibility that are not contained in federal law.

225.   7 U.S.C. 2014 (b) and 2020(e)(5) prohibit states from imposing eligibility requirements for receiving Food Assistance that are not established by federal law, and thus explicitly prohibit additional state eligibility requirements, including the requirement found in M.C.L. 400.10b and Defendant's fugitive felon policy that individuals not have an outstanding felony warrant, regardless of whether they are intentionally evading arrest, confinement or prosecution and regardless if whether they are actively sought by law enforcement.

226.   Under federal law disqualifying **fleeing** felons, an individual with an outstanding felony warrant can be disqualified from Food Assistance, but only if there has been a finding that law enforcement officials are actively seeking the individual, and that the individual knows his or her apprehension is sought and is intentionally fleeing from justice. 7 U.S.C. 2015(k).

227.   7 U.S.C. 2014(a) gives Plaintiffs and subclass members the right to receive Food Assistance, provided they have applied for the assistance and are eligible under the national standards required by 7 U.S.C. 2014(b); 2020(e)(5); 2015(k); and 7 C.F.R. 273.11(n).

228.  Defendant's fugitive felon policies and practices, which implement M.C.L. 400.10b, violate Plaintiff's and subclass members' right to receive Food Assistance under 7 U.S.C. 2014(a), which is enforceable under 42 U.S.C. 1983.

**Count IV – Preemption: Defendant's Policy Automatically Disqualifying People Who Have Outstanding Felony Warrants Violates the Supremacy Clause Because Federal SNAP Law Preempts Both M.C.L. 400.10b and Defendant's "Fugitive Felon" Policy**

**(Plaintiff Barry and Automatic FAP Disqualification Subclass)**

229.   M.C.L. 400.10b and Defendant's implementing fugitive felon policy (previously found in BEM 203 and now published in BEM 204) conflict with the federal SNAP act because the Michigan law and Defendant's policy disqualify people from Food Assistance based on the mere existence of an outstanding felony warrant for the person's arrest, as identified through a computerized "match," without any finding that the person is actively sought by law enforcement or is consciously evading arrest or prosecution.

230.   The SNAP act, through 7 U.S.C. 2014 (b) and 2020(e)(5), clearly provides that states may not impose eligibility requirements for receiving Food Assistance that are not established by federal law, and thus explicitly preempts additional state eligibility requirements, including M.C.L. 400.10b and Defendant's fugitive felon policy (BEM 204) requiring that individuals not have an outstanding felony warrant, regardless of whether they are intentionally evading arrest, confinement or prosecution and regardless of whether they are actively sought by law enforcement.

231.   Under federal law disqualifying **fleeing** felons, an individual with an

outstanding felony warrant can be disqualified from Food Assistance, but only if there has been a finding that law enforcement officials are actively seeking the individual, and that the individual knows his or her apprehension is sought and is intentionally fleeing from justice. 7 U.S.C. 2015(k).

232.   Accordingly, M.C.L. 400.10b and Defendant's "fugitive felon" policy (BEM 204) are preempted by federal law under 7 U.S.C. 2014(b) and 2020(e)(5) (prohibiting states from imposing their own eligibility standards), 7 U.S.C. 2015(k) (establishing federal standards for fleeing felon disqualifications), and the Supremacy Clause of the United States Constitution, Article VI, Clause 2, because Congress has established comprehensive federal standards and requirements for Food Assistance eligibility (including standards related to felony warrants), and because M.C.L. 400.10b and Defendant's "fugitive felon" policy impose additional eligibility standards not set forth in federal law, conflict with federal law, and frustrate the achievement of Congress's full objectives.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that this Honorable Court:

A. Certify this case as a class action on behalf of the Due Process Class and as a class action on behalf of the Automatic Food Assistance Disqualification Subclass described in this Complaint, pursuant to Fed. R. Civ. P. 23(b)(2);

B. Declare that Defendant's criminal justice disqualification notices and

hearing procedures violate Plaintiff's and Due Process Class members'

rights to meaningful notice and an opportunity to be heard under the Due

Process Clause of the Fourteenth Amendment to the U.S. Constitution;

C. Declare that Defendant's criminal justice disqualification notices and

hearing procedures violate federal SNAP law, including 7 U.S.C.

2020(e)(10), as implemented by 7 C.F.R. 273.10(g) and 273.13(a), which

both implements the federal constitutional due process requirements and

provides an independent legal basis for requiring procedural protections;

D. Preliminarily and permanently enjoin Defendant from continuing to deny,

reduce, or terminate public assistance benefits to Plaintiff and Due Process

Class members based on criminal justice disqualifications without providing

notices that detail: (1) which of the five types of criminal justice

disqualifications is at issue; (2) the name of the household member whose

alleged conduct has resulted in the disqualification; (3) the date, place, and

nature of both the alleged crime and the resulting conviction or warrant; (4)

the jurisdiction where the conviction occurred or the warrant was issued; (5)

the name of a specific person or entity with knowledge of the basis for the

disqualification whom the individual can contact for further information; (6)

where applicable, the basis for concluding that the disqualified individual is

aware that he or she is being sought by law enforcement, and is fleeing to

avoid prosecution, arrest, or confinement in connection with a crime that is a felony; and (7) where applicable, the basis for concluding that law enforcement is actively seeking the individual;

E.  Preliminarily and permanently enjoin Defendant from continuing to deny, reduce, or terminate public assistance benefits to Plaintiff and Due Process Class members based on criminal justice disqualifications without providing notices that inform them about the length of the disqualification period, whether benefits can be reinstated, and, if so, what steps the disqualified individual must take to obtain reinstatement.

F.  Order Defendant to:

    a.  prospectively reinstate assistance or benefits to Plaintiff and Due Process Class members whose needs-based public assistance benefits have been unlawfully reduced or terminated without due process of law; and

    b.  resume processing the applications of Plaintiff and Due Process Class members whose applications were unlawfully denied without due process of law;

G.  Declare that Defendant's policy and practice of disqualifying individuals from receiving Food Assistance based on the mere existence of a felony warrant, without a finding that the individual is a fleeing felon under 7 U.S.C. 2015(k) who is intentionally evading prosecution, arrest, custody, or

confinement in connection with a crime that is a felony, and for which the

person is actively sought by law enforcement, violates Plaintiff's and

subclass members' rights to Food Assistance under 7 U.S.C. 2014(a) and

(b), and 2020(e)(5);

H. Declare that Defendant's policy and practice of disqualifying individuals

from receiving Food Assistance based on the mere existence of a warrant,

without a finding that the individual is a fleeing felon under 7 U.S.C.

2015(k) who is intentionally evading prosecution, arrest, custody, or

confinement in connection with a crime that is a felony, and for which the

person is actively sought by law enforcement, is preempted by federal SNAP

law and the Supremacy Clause of the United States Constitution;

I. Preliminarily and permanently enjoin Defendant from denying, reducing, or

terminating Food Assistance to named Plaintiff and members of the

Automatic FAP Disqualification Subclass based on the mere existence of an

outstanding felony or extradition warrant without a finding that the

individual is a "fleeing felon," as that term is defined under federal law, who

is intentionally evading prosecution, arrest, custody, or confinement in

connection with a crime that is a felony and for which the individual is being

actively sought by law enforcement under 7 U.S.C. 2015(k) and

implementing regulations;

J.  Order Defendant to:

    a.  prospectively reinstate assistance or benefits to Plaintiff and Automatic

        FAP Disqualification Subclass members whose Food Assistance has

        been unlawfully reduced or terminated based on Defendant's fugitive

        felon policy; and

    b.  resume processing the applications of Plaintiff and Automatic FAP

        Disqualification Subclass members whose applications were unlawfully

        denied based on Defendant's fugitive felon policy;

K.  Order Defendant to restore, pursuant to 7 U.S.C. 2020(b), 2020(e)(11), and

    2023(b), and pursuant to Defendant's policy in BEM 406 of retroactively

    correcting under-issuances of benefits, all Food Assistance benefits

    unlawfully withheld from Plaintiff and members of both the Due Process

    Class and Automatic FAP Disqualification Subclass, up to 12 months prior

    to the filing of this lawsuit, as a result of the criminal justice disqualification

    notices and fugitive felon policy and practice enjoined by the Court;

L.  Order Defendant to provide notice to all class and subclass members,

    pursuant to Fed. R. Civ. P. 23(d), of any relief granted by the Court in this

    case and of any additional rights or administrative remedies for obtaining

    benefits or assistance wrongfully denied, reduced, or terminated without due

    process of law or in violation the United States Constitution or federal

SNAP law, including but not limited to the right to restoration of Food

Assistance benefits under 7 U.S.C. 2020(b), 2020(e)(11), and 2023(b), and

BEM 406;

M. Award Plaintiff his costs and reasonable attorney's fees under 42 U.S.C.

1988; and

N. Grant such other relief as may be just and proper.


Respectfully submitted,


/s/ Jacqueline Doig_____         /s/ Miriam J. Aukerman
Jacqueline Doig (P37105)              Miriam J. Aukerman (P631615)
Terri L. Stangl (P35257)             AMERICAN CIVIL LIBERTIES
Elan S. Nichols (P57463)             UNION FUND OF MICHIGAN
CENTER FOR CIVIL JUSTICE             1514 Wealthy SE, Suite 242
320 S. Washington Ave – 2nd          Grand Rapids, MI 49506
Floor                                T: (616) 301-0930
Saginaw, MI 48607                    maukerman@aclumich.org
T: (989)755-3120                     Attorney for Plaintiff
jdoig@ccj-mi.org
enichols@ccj-mi.org
Attorneys for Plaintiff

Dated: July __ 2013