UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Walter Barry, et al.,

                Plaintiffs,    Case No. 13-cv-13185
                                        Hon. Judith E. Levy

v.

Nick Lyon, in his capacity as
Acting Director, Michigan
Department of Human Services,

                Defendant.

_____/

**OPINION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING PLAINTIFFS' [95] MOTION TO STRIKE, DENYING DEFENDANT'S [93] MOTION FOR RECONSIDERATION, AND DENYING DEFENDANT'S [94] MOTION FOR STAY**

This matter is before the Court on defendant's Motion for Reconsideration (Dkt. 93) of this Court's January 9, 2015 Opinion and Order (Dkt. 91), defendant's Motion to Stay Judgment (Dkt. 94) pending resolution of his motion for reconsideration, and plaintiffs' Motion to Strike (Dkt. 95) exhibits from defendant's motion for reconsideration.

1

For the reasons set forth below, the Court will partially grant plaintiffs' motion and deny defendant's motions.

## I. Background

The factual background to this case is recounted in the Court's January 9, 2015 Opinion and Order (Dkt. 91) and is adopted here. By that order, the Court granted plaintiffs' motion for class certification, granted plaintiffs' motion for summary judgment, and denied defendant's motion to dismiss or, in the alternative, for summary judgment. Defendant now seeks reconsideration of that order, as well as a stay of judgment. Defendant attached four exhibits to his motion for reconsideration; plaintiffs have moved to strike all four exhibits.

## II. Standard

Defendant's motion is brought as a motion for reconsideration under E.D. Mich. L.R. 7.1(h) and as a motion to amend or alter judgment under Fed. R. Civ. P. 59(e). While the standard is articulated differently for each type of motion, the Sixth Circuit and courts in this district have held the standards are effectively the same. *See Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006); *Hence v. Smith*, 49 F. Supp. 2d 547, 550 (E.D. Mich. 1999).

Defendant's motion cites the standard as articulated in Local Rule 7.1(h); the Court will do so as well. Under that standard, a movant must "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3); *Hence*, 49 F. Supp. 2d at 550. "A palpable defect is a defect that is obvious, clear, unmistakable, manifest or plain." *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997).

A motion for reconsideration, however, "is not a vehicle to re-hash old arguments, or to proffer new arguments or evidence that the movant could have presented earlier." *Gowens v. Tidwell*, No. 10-10518, 2012 WL 4475352, at *1 (E.D. Mich. Sept. 27, 2012) (citing *Sault St. Marie v. Engler*, 146 F.3d 367, 374 (6th Cir.1998)); *accord Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir.2007) (noting "[i]t is well-settled that parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued"); *Owner–Operator Indep. Drivers v. Arctic Express, Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003) (stating that

3

"[m]otions for reconsideration do not allow the losing party ... to raise new legal theories that should have been raised earlier.").

Accordingly, "a party may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier." *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012) (affirming denial of motion for reconsideration brought under local rules of Eastern District of Michigan); *accord Bank of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014) (holding party may not introduce evidence for the first time in a Rule 59(e) motion that could have been presented earlier). "If district judges were required to consider evidence newly presented but not newly discovered after judgment, there would be two rounds of evidence in a great many cases." *Navarro v. Fuji Heavy Industries, Ltd.*, 117 F.3d 1027, 1032 (7th Cir. 1997).

Whether to strike new evidence or only to disregard it is within the district court's discretion.[1] *See, e.g., Int'l Union, United Auto.,*

---

[1] Defendant suggests that even if new evidence could be stricken under Rule 59(e), it should still be part of the record under Local Rule 7.1, because plaintiffs' motion was "filed only as to Fed. R. Civ. P. 59(e)." (Dkt. 99, Def.'s Resp. to Mot. to Strike.) However, the standard is the same for motions under Rule 59(e) and Local Rule 7.1. *E.g., Shah*, 507 F. App'x at 495. Moreover, plaintiffs' motion is to "Strike Exhibits

4

*Aerospace, & Agricultural Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 304 (6th Cir. 2005) (reviewing district court's striking of affidavit under abuse-of-discretion standard).

## III. Analysis

### A. Plaintiff's Motion to Strike

The challenged exhibits are an affidavit of Dale Shaw, a policy analyst at the Department of Human Services (Dkt. 93-2, Ex. 1 to Def.'s Mot. Recon.); an affidavit of David Russell, acting director of DHS' Office of Inspector General ("OIG") (Dkt. 93-3, Ex. 2); a chart with the text of 7 U.S.C. § 2015(k) and 42 U.S.C. § 1382(e)(4) (Dkt. 93-4, Ex. 3); and an email dated November 5, 2014, from Robin Thomas in OIG to defense counsel Joshua Smith and others. (Dkt. 93-5, Ex. 4.)

Plaintiffs contend all four exhibits could have been submitted before entry of the Court's January 9, 2015 order and should therefore be stricken. Defendant's response is that they could not have been submitted earlier, and the Court is to blame. In making this argument, defendant relies on misrepresentations of law and fact and upon

---

Attached to Defendant's Motion for Reconsideration or to Alter Judgment." (Dkt. 95, Pls.' Br. 1.) Its very title addresses both forms in which defendant brought his motion.

5

baseless suggestions of impropriety on the part of plaintiffs' counsel and of bias on the part of this Court.

### 1. The Court's treatment of plaintiffs' pre-judgment submissions

Defendant's first argument does not address whether the exhibits could have been presented earlier. Instead, defendant claims plaintiffs, without leave of Court, filed supplemental authority after the close of briefing on the cross-motions for summary judgment, and "this Court accepted" that authority. (Dkt. 99, Def.'s Br. 2.) Then, plaintiffs "improperly offer[ed] evidence at the hearing" on November 14, 2014, but the impropriety "did [not] stop this Court from accepting that evidence over Defendant's objection." (*Id.* at 3 n.1.) Refusing to accept defendant's exhibits would thus be unfair.

There is more petulance than substance here. True, plaintiffs did file supplemental authority after the briefing closed, and without leave of Court. (Dkt. 89.) The supplemental authority consisted of two opinions from a similar case in this district, issued after the close of briefing and two weeks before oral argument in this case. It is far from uncommon for parties to point to supplemental authority outside of scheduled briefing, even at a hearing on a motion. Here, defendant had

6

ample opportunity to address that authority at the hearing, or to move to strike the filing. At any rate, what plaintiffs did is qualitatively and significantly different from what defendant attempts to do here – namely, to submit <u>new evidence</u>, <u>after</u> judgment.

Defendant's allegation that the Court improperly accepted evidence at the November hearing is simply false. Plaintiffs proffered copies of two Social Security benefit disqualification notices that were part of the pleadings in another lawsuit. The Court stated on the record that it was not taking evidence at the hearing, that it noted defendant's objection to the notices, and that the notices would not be docketed as part of the record in this case. Indeed, the notices are not part of the record in this case. Nor are the notices cited or relied upon anywhere in the Court's January 9, 2015 order. (*See* Dkt. 91.)

In sum, defendant's charge of unequal treatment by the Court is meritless and does not support admission or consideration of defendant's exhibits.

    2.    <u>The Court's alleged rejection of supplemental briefing</u>

Defendant next argues that he tried to present the challenged evidence at the hearing, but was rebuffed by the Court. Specifically,

7

defendant claims that "[a]t several junctures during the hearing, Defendant offered to provide supplemental briefs to the Court. For instance, as this Court notes in its Decision and Order, Defendant referenced the rescission of Plaintiff Walter Barry's second felony warrant at oral argument. Each time, the Court rejected those offers." (Dkt. 99, Def.'s Resp. 3 & n.2.)

The claim that the Court rejected evidence regarding Barry's second warrant is false. In fact, defendant did not offer to provide a supplemental brief, or to submit additional evidence, on the alleged rescission of Barry's second felony warrant. Nor did defendant offer supplemental briefing or evidence on <u>any</u> of the issues related to the exhibits to his motion for reconsideration.

Rather, defendant's counsel offered supplemental briefing on two tangential issues: (1) the qualifications of proposed class counsel and (2) whether Michigan can indirectly require photo identification as part of the benefit reinstatement process. The Court declined supplemental briefing on the second issue, but defendant's counsel admitted that issue was tangential – effectively acknowledging that supplemental briefing was unnecessary. As for the first issue, defendant's counsel

8

stated he had no reason to dispute the qualifications of proposed lead class counsel. Again, defendant's counsel effectively acknowledged that supplemental briefing was unnecessary. Moreover, the Court did not reject briefing on this issue, but expressly left open the possibility that supplemental briefing could be requested.

### 3. Timing of the Court's opinion and order

Defendant's third argument also rests on a factual misrepresentation; namely, that "the Court stated that it would issue a decision with relative speed." (Dkt. 99, Def.'s Resp. 3.) In fact, the Court stated that it would "work as fast as I can" but "can't give you an exact date." The Court also emphasized – repeatedly – that it wished to take a close look at the numerous issues in this case and give them careful attention.

Even assuming that the Court had indicated an opinion was imminently forthcoming, defendant could have immediately moved to introduce new evidence, either at the hearing or by written motion that same day or the next. Instead, defendant inexplicably decided it would be pointless to do so, and now blames the Court for his own misjudgment.

9

      4.     <u>Completeness of the record</u>

Finally, defendant proclaims that "the essential issue remains whether this Court's decision should be based on complete and accurate facts." (Dkt. 99, Def.'s Resp. 4.) Counsel's job is, in part, to ensure the Court has complete and accurate facts before making a decision. Any incompleteness or inaccuracy – and the Court finds neither here – is entirely due to defendant's unexplained failure to submit evidence in a timely manner.

Even if the Court were to consider defendant's new evidence, the outcome of this case would be no different. Acceptance of the Russell affidavit would not remedy the legal errors and evidentiary problems with its contents, as discussed below. As explained in the Court's Opinion and Order, defendant's best efforts to pick off the individual named plaintiffs – efforts that continued until the eve of the November hearing – came too late to moot the class claims in this case. Those efforts were also not enough to moot the individual claims of four of the five named plaintiffs.

      5.     <u>Conclusion</u>

10

Defendant has failed to show his exhibits could not have been presented before judgment in this case. Exhibit 3, however, consists solely of the text of two statutory provisions already presented to and analyzed by the Court: 7 U.S.C. § 2015(k) and 42 U.S.C. § 1382(e). As such, Exhibit 3 is not "new evidence," and will not be stricken from the record.

Exhibits 1, 2, and 4 are new evidence and could have been presented to the Court earlier. All three exhibits will be stricken for this reason, as well as for additional reasons. Admitting the affidavits in Exhibits 1 and 2 would prejudice plaintiffs, as they would have no opportunity to present counter-evidence or to depose affiant Russell. Russell's affidavit does not indicate his competence to testify as to (1) matters of constitutional law, including adequacy of notice under the Fourteenth Amendment; (2) matters of statutory law, including the meaning and scope of Michigan law governing LEIN use and of federal law governing disqualification from SNAP benefits; and (3) matters of criminal procedure, including how warrants function. Russell's affidavit also appears to be inadmissible opinion testimony. *See* Fed. R. Evid. 701, 702. For these reasons, his affidavit cannot be considered in

deciding the motions for summary judgment. *See* Fed. R. Civ. P. 56(c)(4); *Alexander v. CareSource*, 576 F.3d 551, 558 (stating that "evidence submitted in opposition to a motion for summary judgment must be admissible"). The statements in the email offered as Exhibit 4 constitute hearsay and, as such, could not be considered on a motion for summary judgment. Fed. R. Evid. 801, 802; *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

### B.   Defendant's Motion for Reconsideration (Dkt. 93)

Defendant raises four grounds for reconsideration. One of them is presented here for the first time; the other three have already been presented to and analyzed by the Court. As such, none is a proper ground for reconsideration. *Reliance Mediaworks (USA) Inc. v. Giarmarco*, 549 F. App'x 458 (6th Cir. 2013) (holding party cannot raise issue on motion for reconsideration that it had raised in earlier filings but declined to brief thereafter); *Sault St. Marie*, 146 F.3d at 374; *Gowens*, 2012 WL 4475352, at *1; E.D. Mich. L.R. 7.1(h)(3). The Court will nonetheless explain why each argument fails to establish a "palpable defect," the correction of which would result in a different outcome.

1. *Burford* abstention does not apply

Defendant resurrects an old argument, last made a year and a half ago in his response (Dkt. 30) to plaintiff's motion for preliminary injunction, that this Court "must decline" to exercise jurisdiction over this matter, under *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

Under the so-called "*Burford* doctrine,"

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) [hereinafter "NOPSI"]. The balance between federal and state interests "only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Adrian Energy Assocs. v. Michigan Pub.*

13

*Serv. Comm'n*, 481 F.3d 414, 423 (6th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).

There are no "difficult questions of state law" here, only questions of federal law. And where the claim is, as here, that federal law has preempted the state's regulatory authority, "federal adjudication . . . would not disrupt the State's attempt to ensure uniformity in the treatment of an essentially local problem." *NOPSI*, 491 U.S. at 362 (citing *Alabama Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 347 (1951)). *Burford* abstention is unwarranted here.

### 2. Comparison of the SNAP Act with the Social Security Act

Defendant rehashes his previous argument that significant textual differences counsel against looking to 42 U.S.C. § 1382(e) as an aid to interpretation of 7 U.S.C. § 2015(k). The Court has already explained that "in the absence of a plain indication to the contrary, . . . Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989) (quoting *Jerome v. United States*, 318 U.S. 101, 104 (1943)). Defendant again cites no authority to

14

the contrary. And there is no "plain indication" in § 2015(k) that Congress intended for states to define "fleeing."

Defendant likewise cites no authority for his new argument that the "actively seeking" requirement is not operative until the Secretary of Agriculture promulgates a final regulation. Section 2015(k)(2)(B) clearly indicates Congress' intent that only persons actively sought by law enforcement may be disqualified from food assistance.[2]

Finally, the verb "is fleeing" is not "passive," as defendant contends, presumably meaning the passive voice. "Is fleeing" is the present continuous or present progressive, a form of the present tense used to indicate action that is ongoing in present time. *Verb Tenses*, <u>Oxford Dictionaries</u>, http://www.oxforddictionaries.com/words/verb-tenses#continuous (last visited March 23, 2015).

    3.    <u>The claims of plaintiffs Barry and Copeland are not moot</u>

---

[2] Defendant misapplies the interpretive canon *expressio unius, exclusio alterius.* As reflected in its Latin name, the canon applies when, of two terms, only one, and not the other, appears in the statutory provision. Here, both "fleeing" and "actively seeking" appear in section 2015. The argument that "actively seeking" must be defined before becoming operative is not the same as the argument that "actively seeking" does not appear in the provision at all, and therefore was intentionally left out.

Defendant's mootness arguments have already been addressed in the Court's January Opinion and Order. If the Court were to consider defendant's Exhibits 1 and 4, a different outcome would not result. Nor would a different outcome result even if the Court found Copeland's and Barry's claims moot. That is because plaintiff Anderson's claims would remain, and, more importantly, mooting the named plaintiffs' claims while a motion for class certification is pending <u>does not moot the case</u>. *See Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005); *Dozier v. Haverman*, No. 14-12455, 2014 U.S. Dist. LEXIS 153395, at *25-36 (E.D. Mich. Oct. 29, 2014). Reconsideration on this issue would thus be inappropriate, because a movant must "not only demonstrate a palpable defect . . . but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3) (emphasis added).

    4.   <u>This Court's order does not require defendant to violate state law</u>

16

Finally, defendant argues, for the first time, that the Court's January 9, 2015 order requires DHS employees to violate Michigan law – specifically, Mich. Comp. Laws §§ 28.214(3) and (5).[3]

There is no colorable argument that subsection (3) could be violated here. Subsection (3) provides that "[a] person shall not access, use, or disclose nonpublic information governed under this act for personal use or gain." Defendant has not indicated where this Court ordered disclosure of LEIN information for the personal use or gain of DHS employees.

Subsection (5) provides that "[a] person shall not disclose information governed under this act in a manner that is not authorized by law or rule." Defendant also cites Mich. Admin. Code R. 28.5208(4), which provides that "[e]xcept as permitted in these rules or if authorized by statute, information from LEIN, AFIS, or other

---

[3] Defendant maintains that "implicit in the Court's holding is the finding that the Department does not inform clients of the nature of the intended action and its duration. But this implied finding is inaccurate." The Court ordered defendant to "provid[e] notice that explains, in detail: (1) The nature of the intended action and its duration." (Dkt. 91, Opinion and Order 95) (emphasis added). The implication is not that defendant "does not inform" clients at all, but that defendant does not explain the disqualification with the level of detail required by both the SNAP Act and the Due Process Clause of the Fourteenth Amendment.

17

information systems shall not be disseminated to an unauthorized agency, entity, or person."

The Court did not order defendant to disclose LEIN information. Rather, the Court ordered defendant to disclose certain information about a disqualifying warrant to an applicant for or recipient of food assistance benefits. While DHS might initially obtain that information from LEIN, it can (and must) then verify that information – as DHS already does in other contexts – by, for example, contacting law enforcement or the relevant prosecuting attorney's office. Information obtained from those sources is not covered by Mich. Comp. Laws § 28.214(5) or Mich. Admin. Code R. 28.5208(4).

Furthermore, state law may, in fact, authorize the disclosure of LEIN information in these circumstances. Subsection (5) prohibits disclosure "in a manner that is not authorized by law or rule." Subsection (1)(a)(iii) requires the Policy Council to "[e]nsure access by the Department of Human Services to information necessary to implement section 10c of the Social Welfare Act." Mich. Comp. Laws § 28.214(1)(a)(iii). In turn, section 10c provides that, upon receiving information of an outstanding felony warrant, DHS "shall notify the

18

local office handling the recipient's public assistance case of that outstanding felony warrant or extradition warrant." Mich. Comp. Laws § 400.10c(1). The local office then "shall take appropriate action regarding cases that local office receives notification of under this subsection." In short, LEIN information must be provided to DHS to implement section 10c, and section 10c authorizes DHS, through its local office, to "take appropriate action" regarding outstanding felony warrants. Surely, "appropriate action" includes providing constitutionally adequate notice of disqualification from benefits.

### C. Defendant's Motion to Stay Judgment pending resolution of her Motion for Reconsideration (Dkt. 94)

Because defendant's motion for reconsideration has been resolved, her motion to stay will be denied as moot.

### III. Conclusion

Accordingly, plaintiffs' Motion to Strike (Dkt. 95) is GRANTED as to Exhibits 1, 2, and 4 to defendant's Motion for Reconsideration;

Plaintiff's Motion to Strike is DENIED as to Exhibit 3 to defendant's Motion for Reconsideration;

Defendant's Motion for Reconsideration (Dkt. 93) is DENIED; and

19

Defendant's Motion to Stay Judgment is DENIED as moot.

IT IS SO ORDERED.

Dated: March 24, 2015        s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 24, 2015.

                             s/Felicia M. Moses
                             FELICIA M. MOSES
                             Case Manager